# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **CLAUDETTE WILLIAMS,** )<br>)<br>    **Plaintiff,** )<br>)<br>**vs.** )<br>)<br>**CAROLYN W. COLVIN,** ACTING )<br>**COMMISSIONER OF SOCIAL** )<br>**SECURITY,** )<br>)<br>    **Defendant.** ) | Civil Action Number<br>    **7:15-cv-1315-AKK** |

## MEMORANDUM OPINION

Claudette Williams brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that his decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

### I.     Procedural History

Williams filed her application for Title II Disability Insurance Benefits on December 20, 2011, alleging a disability onset date of September 5, 2011 due to injuries sustained to her right leg in a car accident, congestive heart failure, high

blood pressure, acid reflux, sleep apnea, anemia, and problems with her left leg. (R. 200, 220). After the SSA denied her application, Williams requested a hearing before an ALJ. (R. 127–128). The ALJ subsequently denied Williams' claim, (R. 50–52), which became the final decision of the Commissioner when the Appeals Council refused to grant review, (R. 1–4). Williams then filed this action pursuant to § 405(g). Doc. 1.

## II.     Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.*  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.   Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.   The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Williams met the criteria for Step One because she had not engaged in any substantial gainful activity since her alleged onset date in September 2011. (R. 55). Next, the ALJ acknowledged Williams' impairments of "status post right foot open

4

reduction and internal fixation; status post left hip dislocation, reduced while closed; status post ulnar collateral ligament repair right thumb; obstructive sleep apnea; status post uvulopalatopharyngoplasty; and, anemia" met the requirements of Step Two. (R. 55). The ALJ then proceeded to the next step and found that Williams did not satisfy Step Three because she did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 56) (internal citations omitted). In this step, the ALJ acknowledged Williams' complaints of joint pain, but noted that "no treating, examining, or reviewing physician has suggested the existence of any impairment or combination of impairments that would meet or medically equal the criteria of any listing impairments." (R. 56).

    Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, he proceeded to Step Four, where he determined that, at her date last insured, Williams had the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b). [Although, Williams] would be required to have a sit/stand option to relieve pain and discomfort, and she is able to ambulate short distances of up to 50 yards per instance." (R. 56). The ALJ placed further restrictions on Williams, finding that "[Williams] can never operate commercial vehicles. . . . She is unable to perform at

production rate pace, but can perform goal-oriented work. . . . Any time off task by [Williams] would be accommodated by normal workday breaks." (R. 57). In light of Williams' RFC and the testimony of a vocational expert ("VE"), the ALJ determined that Williams was unable to perform any past relevant work. (R. 62). Lastly, in Step Five, the ALJ considered Williams' age, education, work experience, and RFC, and determined "there are jobs that exist in significant numbers in the national economy that [Williams] can perform." (R. 62). Therefore, the ALJ found that Williams "has not been under a disability, as defined in the Social Security Act, from September 5, 2011." (R. 63).

## V. Analysis

Williams raises multiple contentions of error. For the reasons below, the court rejects each contention and affirms the ALJ's decision.

1. *The ALJ did not err by purportedly failing to address Williams' obesity*

Williams' first contention of error is based on the ALJ's alleged failure to adequately address Williams' obesity. Specifically, Williams contends that the ALJ ignored the evidence of Williams' obesity contained in the record in determining that she was not disabled and failed to properly apply Social Security Ruling 02-1p. Doc. 6 at 3–5. The record belies this contention.

A review of the record indicates that Williams' body mass index is above 50, which establishes obesity. *See, e.g., Brown v. Barnhart*, 325 F. Supp. 2d 1265,

1271–73 (N.D. Ala. 2004) (a BMI of 30 or greater equals obesity). As such, Social Security Ruling 02-1p ("SSR 02-1p") instructs the ALJ to evaluate the impact of obesity on a claimant's ability to work, and provides examples of when obesity may meet the requirement of a listing, such as where "the obesity is of such a level that it results in an inability to ambulate effectively, . . . it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint . . . ." SSR 02-1p (S.S.A.), 2002 WL 34686281, * 5. However, "[the SSA] will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. [The SSA] will evaluate each case based on the information in the case record." *Id.* at \*6. In other words, obesity alone is insufficient to establish disability or the severity of her impairment. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.").

Turning to the ALJ's decision, it is clear that the ALJ thoroughly recounted Williams' medical record and evaluated her RFC by looking at the medical record as a whole, including the obesity. First, in Step Two, the ALJ discussed Williams'

severe impairments of "status post right foot open reduction and internal fixation; status post left hip dislocation, reduced while closed; status post ulnar collateral ligament repair right thumb; obstructive sleep apnea; status post uvulopalatopharyngoplasty; and, anemia" met the requirements of Step Two. (R. 55). In this step, the ALJ also discussed Williams' left knee and right shoulder pain, but noted that during the relevant period, Williams did not complain of knee pain. (*Id.*) With respect to her shoulder pain, the ALJ discussed the x-rays and examinations performed by Dr. William Standeffer, Jr., M.D., who observed that "[Williams'] shoulder was normal to inspection . . . and [Williams] exhibited a normal pain-free range of motion." (*Id.*). Accordingly, the ALJ determined that these impairments were non-severe.

Second, the ALJ next turned to Williams' complaints of regurgitation during her sleep as a result of gastroesophageal reflux disease and limitations due to her hypertension medication, and noted the absence of evidence that Williams complained of either nighttime regurgitation or side effects from her hypertension medication to her physicians. (R. 56). As a result, the ALJ determined that these impairments were also not severe. The ALJ reached a similar determination with respect to congestive heart failure, noting that, although Williams claimed that she suffered from it, there was no such diagnosis in the record. (*Id.*).

Finally, in the ALJ's determination of Williams' RFC, the ALJ performed a comprehensive review of the medical record and discussed Williams' physical limitations with respect to her ability to ambulate. (R. 57–58). Specifically, the ALJ discussed that Williams was able to care for herself, although she used a cane to stand for long periods and had difficulty walking long distances due to her foot and hip injuries. (R. 58–59). Relevant here as it relates to obesity, the ALJ noted Williams' obesity in several instances, pointing out that Williams is five foot two inches tall and weighed 289 pounds. (R. 61). However, the ALJ found that "the physical examinations . . . were mostly normal and [that Williams] alleges no limitations due to her obesity." (*Id.*). Furthermore, the ALJ highlighted that "[n]o treating or examining physician has placed any restrictions on [Williams] due to her obesity." (R. 61). Based on this record, the ALJ determined that Williams' obesity would not prevent her from performing light work consistent with the RFC determination. (*Id.*).

Contrary to Williams' contention, the ALJ reviewed Williams' impairments, including her obesity, in combination in reaching his determination. In concluding that Williams did not have an impairment or combination of impairments that met or medically equaled a Listing, the ALJ found not only that "no treating, examining or reviewing physician has suggested the existence of any impairment or combination of impairments that would meet or medically equal the criteria of

9

any listed impairments. . . [but that Williams] does not meet listing 1.02, *Major dysfunction of a joint*, as the evidence does not establish an inability to ambulate or perform fine and gross movements effectively." (R. 56). The substantial evidence supports the ALJ's determination here because there is no evidence in the record showing any degree of limitation related to obesity and Williams has not demonstrated her obesity further reduced her capacity for work during the relevant period. *See* (R. 216–223) (initial disability determination interview); (R. 242–256) (Williams' function report in which she indicates only that she is limited by pain in her foot and thumb). Therefore, where, as here, the ALJ discussed Williams' obesity, and, in any event, there is no rigid requirement to refer to every piece of evidence as long as it is clear the ALJ considered the medical record as a whole, *Hennes v. Comm'r of Soc. Sec. Admin.,* 130 F. App'x 343 (11th Cir. 2005), the ALJ did not err in concluding that Williams' obesity impairment was not severe. *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005); *Rolack v. Astrue*, 2008 WL 1925092, *2–3 (M.D. Fla. Apr. 29, 2008) (holding that the ALJ sufficiently considered the combined effects of all of the claimant's impairments and rejecting the claimant's argument that "the ALJ failed to consider whether his obesity negatively affected his other conditions.").

> 2. *The ALJ did not err in giving weight to the medical opinions in the record*

Williams contends next that the ALJ erred by relying on opinions that were not in the record and on medical evidence that pre-dated her alleged onset date. Doc. 6 at 7–9. To support this contention, Williams argues first that the ALJ misrepresented the weight he gave to Dr. William Standeffer, Jr., M.D., when the ALJ stated that Williams had no real walking restrictions. Doc. 6 at 7–8. The evidence does not support Williams' contention. Specifically, in his discussion of Williams' RFC, the ALJ initially discussed the surgery that Dr. Standeffer performed after Williams' car accident, noting that Dr. Standeffer discharged Williams in "good condition" and "instructed [Williams] not to drive or perform any heavy lifting. . . [but that Williams] could return to work, but should use a walker for ambulation." (R. 58). The ALJ then discussed the follow-up appointments which contained entries from Dr. Standeffer that Williams continued to complain of pain in her foot and used a wheelchair, but that he placed no walking limitations on Williams because a physical examination "revealed well-healed incisions without evidence of infection, and no calf pain [and an] x-ray of [Williams'] right foot demonstrated appropriate alignment of the midfoot." (R. 58). Finally, the ALJ pointed out that subsequent follow-up appointments with Dr. Standeffer also revealed no significant abnormalities on the x-rays or in physical range of motion exams. (R. 58–59). The ALJ's discussion of Dr. Standeffer's

opinions is consistent with the record, which shows that Dr. Standeffer's notes indicate that he believed Williams to have a non-antalgic gait, (R. 478–480), that she had no significant abnormalities, (R. 476–80), and that he placed no restrictions on Williams.[1] (R. 555–567). In short, the record belies Williams' contention that the ALJ failed to properly credit Dr. Standeffer's opinion or that the ALJ relied on an opinion that was not in the record.

Next, Williams challenges the weight the ALJ gave to the opinions of Drs. James D. Geyer and Salem K. David, who treated Williams for obstructive sleep apnea. According to Williams, the ALJ erred in crediting these physicians' opinions because they treated Williams prior to the alleged onset date. Doc. 6 at 8. The court disagrees because, in his discussion of the medical records of these two physicians, the ALJ noted that Williams had not sought treatment during the relevant period and that "[a]t the most recent evaluation, [Williams] denied excessive daytime sleepiness and admitted that her symptoms were well controlled with consistent CPAP use." (R. 60). Moreover, the ALJ is, in fact, required to weigh all the medical evidence in the record and is "required to state with particularity the weight he gave to different medical opinions and the reasons therefor." *See, e.g., Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Where,

---

[1] The statement that Williams is limited to walking around the house on which Williams bases her contention of error is part of a summary of Williams' complaints, not an actual finding by Dr. Standeffer, and does not appear in later examinations. (R. 559–567).

as here, Williams was alleging that she suffered from the severe impairment of sleep apnea, the ALJ had an obligation to assess the medical record related to this impairment, including evidence that it is controlled with the CPAP therapy. (R. 367–70). Likewise, it is relevant evidence that both physicians instructed Williams to refrain from driving due to the possibility of excessive daytime sleepiness, (R. 372), which the ALJ took into account in the RFC determination, (R. 57). Put simply, the ALJ did not err in considering these physicians' opinions in the RFC.

Lastly, Williams claims that the ALJ erred by failing to provide a rationale for giving partial weight to the opinions of Dr. David L. Hinton. Doc. 6 at 9. With respect to the ALJ's analysis of Dr. Hinton's opinions, the ALJ found that "[t]he evidence . . . establishes that [Williams] is not disabled by her anemia. While she complained of weakness and lightheadedness on one occasion in December 2011, there are no further complaints in the record." (R. 60). This assessment is consistent with Dr. Hinton's treatment records, which indicate that Williams has anemia and a history of iron deficiency, but that Williams' anemia is "overall stable." (R. 514–541). Moreover, there is nothing in the record to indicate that Williams sought further treatment for her anemia. Accordingly, the court rejects the contention that the ALJ erred in considering Dr. Hinton's opinion.

Based on the court's review of the record, it is clear that the ALJ considered the full medical history and, in making his determination of Williams' RFC,

properly and comprehensively analyzed the medical evidence as a whole. (R. 56-61). Accordingly, the court concludes that the ALJ properly considered the medical evidence in determining Williams' ability to do work in spite of her impairments and made "clear the weight accorded to each item of evidence and the reasons for those decisions . . . ." *Himes v. Comm'r of Soc. Sec.,* 585 F. App'x 758, 764 (11th Cir. 2014).

    3. *The ALJ did not err in relying on the testimony of the vocational expert*

Finally, Williams takes issue with the ALJ's reliance on the VE's testimony, contending that the ALJ erred by finding that there were jobs available that Williams could perform with a sit/stand option. Williams contends that because "the DOT [Dictionary of Occupational Titles] does not address a sit/stand option," the VE's testimony was inconsistent with the DOT and the ALJ's failure to address this inconsistency warrants remand. Doc. 6 at 9.

The record does not support Williams' contention. Relevant here, in questioning the VE, the ALJ asked about jobs at the light exertional level with a sit/stand option. In response, the VE opined that jobs existed, such as general office clerk and receptionist, but that the sit/stand option limited the number of jobs available. (R. 105–106). After further questioning, the ALJ asked the VE if her testimony was consistent with the DOT, and the VE answered in the affirmative. (R. 106). Based on this testimony, the ALJ found that "there are jobs

that exist in significant numbers in the national economy that [Williams] can perform," (R. 62), and that "[p]ursuant to SSR 00-4p, [he] determined that the [VE's] testimony is consistent with the information contained in the [DOT]." (R. 63).

Contrary to Williams' contention, the ALJ complied with SSR 00-4p when he asked the VE if there were any inconsistencies between the jobs identified and the DOT. *See Johnson v. Comm'r of Soc. Sec.*, 2014 WL 12623026, *4 (M.D. Fla. Sept. 9, 2014) ("An ALJ need not independently verify the VE's testimony or further interrogate the VE when the VE indicates that no conflict exists."). Moreover, Williams' counsel did not challenge or object to the VE's testimony, and failed to note any alleged inconsistency between the VE's testimony and DOT. *See Leigh v. Comm'r of Soc. Sec.,* 496 F. App'x 973, 975 (11th Cir. 2012). Furthermore, because the DOT is not considered "the sole source of admissible information concerning jobs" in this Circuit, *Jones v. Apfel,* 190 F.3d 1224, 1229–30 (11th Cir. 1999), "when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT," *Jones v. Comm'r of Soc. Sec.,* 423 F. App'x 936, 938 (11th Cir. 2011). Therefore, even if Williams is correct that the ALJ erred in determining that the VE's testimony was consistent with the DOT, any such error is harmless, and the ALJ has no obligation to seek further explanation of the

inconsistency. *Jones,* 423 F. App'x at 939 (citing *Diorio v. Heckler*, 721 F.2d 72, 728 (11th Cir. 1983)).

## VI. CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Williams is not disabled and has the RFC to perform light work is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 30th day of January, 2017.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE